KNAPP BROTHERS MANUFACTURING COM-
PANY, Appellant, v. KANSAS CITY STOCK
YARDS COMPANY OF MISSOURI et al., Re-
spondents.

Kansas City Court of Appeals, November 25, 1912.

1. MECHANIC'S LIENS: Liberal Construction: Name of Owner.
The mechanic's Lien Law should be liberally construed and an
honest mistake, in the name of the owner of the building, not
allowed to defeat the lien of the mechanic, when no rights of
third persons have intervened.

2. ———: Notice: Name of Corporation. When the property was
correctly described but the notice was not addressed to the
full name of the corporation, but served in the office of the cor-
poration upon one of its officers, the notice was not invalidated
thereby.

3. ———: Material Furnished: Inseparably Blended. When the
material furnished is inseparably blended in an account from
which it cannot be distinguished, as to what is lienable, the en-
tire lien is lost.

4. ———: Mistake in Notice: Subcontractor. A mistake in the
notice of a lien claim, given by a subcontractor to the owner,
will not vitiate the notice unless it appears that the owner
was misled thereby to his prejudice.

Appeal from Jackson Circuit Court.—*Hon. W. O.
Thomas,* Judge.

REVERSED AND REMANDED.

*Ellis, Cook & Barnett* and *Burnham, Ellis & Yale*
for appellant.

*Lathrop, Morrow, Fox & Moore* for respondents.

BROADDUS, P. J.—This is a suit to enforce a
materialman's lien against the Stock Yards Building
in Kansas City, Missouri. The defendant, Swenson
Construction Company, had the contract for the erec-

tion of the building, and did the work. Among other material that went into its construction was what is known as corner bead. The specifications called for Hunt's metal corner bead or its equivalent. The contractor finally decided to use the Knapp corner bead. Instead of obtaining it direct from the plaintiff they bought it from defendants, Richards & Conover, a corporation engaged in business in Kansas City, Missouri. The latter bought the material from defendant, Schuyler C. Hodge, who was doing business as the Building Specialty Company. The construction company paid Richards & Conover for the material and that company paid Hodge for it. Hodge failing to pay the plaintiff, it filed a lien on the building, and in due time instituted this suit. The original contractor, the Swenson Construction Company, bought the material from Richards & Conover to be used in the building. The latter bought it from Hodge, also to be used in the building. And the latter bought it from plaintiff to be so used. Richards & Conover made a written order on Hodge, or the Building Specialty Company, for the material. There seemed to have been some delay in the delivery of the goods, whereupon Richards & Conover's agent telegraphed to plaintiff and also wrote it to hurry up the shipment, and when the material arrived at Kansas City, he was on hand and opened the cars and helped check it out. This agent at the time had Hodge's bill for the goods and made a notation on it for the Swenson Construction Company. The goods were taken from the cars and hauled in Richards & Conover's wagons and delivered at the building in the course of construction.

The plaintiff refused to sell the material to Hodge of the Building Specialty Company, but agreed if he would give the name of the building in which it was to go and the name of the party to whom he was selling that it would ship the material. Hodge wrote to plaintiff that the material was to go into the Live Stock

Exchange Building in Kansas City, and that Richards & Conover were the purchasers of the goods.

The plaintiff's lien called for 25,000 feet of beading, 580½ of which was made up of short lengths, the price of which was twenty-five dollars per thousand; the price of the balance was twenty-nine dollars per thousand. It was shown that 2626 feet of the bead was left over that did not go into the building. There was nothing to show to which class this left over material belonged as to price.

The lien was filed in the name of the Kansas City Stock Yards Company and that company was made defendant in the suit. The evidence disclosed that that company was a Kansas corporation that had gone out of business, and was succeeded by a corporation known as the Kansas City Stock Yards Company of Missouri; a Missouri corporation. However, notice of the lien and service of process were had against the latter. The plaintiff was allowed to amend its petition by inserting the words, "of Missouri" after the word company.

The plaintiff offered to credit its lien on the overplus beading at the highest price of the classification, at the rate of twenty-nine dollars per thousand.

The court's instruction to the jury practically was to return a verdict in favor of plaintiff against Hodge and in favor of all the other defendants. From the judgment, plaintiff appealed.

The judge announced the following reasons for denying appellant's lien, viz.: "First, that there is a complete variance between the lien and the parties that are defendants to this suit, in that the lien is filed against the Kansas City Stock Yards Company, which appears to be one corporation, and the suit is filed against the Kansas City Stock Yards Company of Missouri, and it appears that the latter company is the owner of the property against which the lien is sought to be obtained or secured, and that, therefore,

there is a variance between the lien and the parties to the suit.

"Second, that the account sued on is for a certain number of lineal feet of this beading. A portion of this beading is charged at the rate of twenty-five dollars per thousand, namely, 580½ feet, and the remainder at twenty-nine dollars per thousand. The evidence shows that some 24,592 feet was used in the building, but there is no evidence as to whether the amount that was used was to be paid for at the rate of twenty-nine dollars per thousand for the whole of it, or a portion of it at the rate of twenty-five dollars per thousand, and, therefore, by reason of the uncertainty or failure of proof, the demurrer to the lien should be sustained."

The first question is as to the variance between the names of the Kansas City Stock Yards Company and the same name with the words added, "of Missouri." As it appeared that there was only one Stock Yards Company doing business in the city, and that the notice of the lien and of the suit was served upon such latter corporation it will be assumed that no one was misled by the mistake. It is held that the Mechanics' Lien Law should receive a liberal construction and that "an honest mistake in the name of the owner of the building will not defeat the lien of the mechanic, when no rights of third persons have intervened." [Sash & Door Works v. Shade, 137 Mo. App. 20.] In that case the name of James D. James was given as the owner of the building instead of John D. James, the correct name. And the holding is similar in Mississippi Planing Mill v. Church, 54 Mo. 520. It is held that: "Where the notice of filing the lien and petition stated that Rutledge was the owner instead of Eldridge, and the court at the trial permitted plaintiff to strike out the name of Rutledge wherever it appeared in the notice and petition, and insert the name of Eldridge, held, that no one was misled or

deceived, or in the least prejudiced by the amendments, and that they were correctly made." [Darlington v. Eldridge, 88 Mo. App. 525.] An amendment to the petition allowing plaintiff to strike out one of them and substituting another was upheld as compatible under the code. [Dwyer v. Flanagan Bros., 87 Mo. App. 340.] Where the property was correctly described but notice was not addressed to the full name of the corporation, but was served in the office of the corporation upon one of its officers, the notice was not invalidated thereby. [Construction Company v. Jones, 60 Mo. App. 1.] There was no question but what the amendment was proper and that the lien on the building was not invalidated by the mistake in the name of the corporation.

Second: Was the lien invalid because it was shown that part of the material did not go into the building, and that there was no evidence to show whether it belonged to that part priced at twenty-five dollars a thousand or that at twenty-nine dollars a thousand? When we take into consideration the fact that the materialman cannot always know whether a part or the whole of the material furnished to a contractor actually goes into the construction of the building, we are bound, in fairness to him, to make a reasonable allowance for mistakes as to that matter on his account. If the mistake is an honest one for which he is not to blame, great injustice would be done if he should thereby lose his lien. It is true that the statute requires that he should make out a just and true account, but it does not mean that it should be invalidated for a minor mistake honestly made. The courts of this State have held that the statute is highly remedial and should receive a liberal construction.

It is true the evidence failed to show how much of each class of the material was used in the construction of the building, but it did show that the greater part of both was so used. But the difference was so

small that if none of the lower priced material had been used, it would have amounted to about $14.51 at cost. And when plaintiff offered to give credit on its claim for the part left over at the higher price of twenty-nine dollars per thousand, no injustice was done defendants for they were justly indebted to plaintiff for the amount that actually went into the building at the greater price of twenty-nine dollars per thousand.

The defendants rely upon a number of cases to sustain the proposition that plaintiff's claim of lien is not such as the statute requires. For instance, it is held that when the material furnished is inseparably blended in an account from which it cannot be distinguished as to what is lienable and what is not lienable, the entire lien is lost. [Edgar v. Salisbury, 17 Mo. 271; Murphy v. Murphy, 22 Mo. App. 18; Dugan Cut Stone Co. v. Gray, 43 Mo. App. 671, and other cases.] But those authorities are not to the point in controversy. In the case of Lime Stone Company v. Methodist Church, 156 Mo. App. 671, Judge ELLISON drew the distinction between errors innocently made and where the mechanic "has so intermingled his lien claim with nonlien items so that the exact amount for which he is entitled to a lien cannot be readily ascertained by inspection of the claim, the whole lien must fail, whether the error was intentional or unintentional." There was no such intermingling in this instance. It was all lienable matter, sold and delivered for the purpose of being used in the construction of the building, and all was so used except a small portion, and the only difficulty was, the evidence did not disclose to what classification it belonged. But as the plaintiff offered to have it credited at the greater price, that was sufficient, and the defendants were in all good conscience chargeable with what did go into the building. To hold otherwise would be clinging to a mere technicality at the expense of undeniable justice. "Mis-

takes in the notice of a lien claim, given by a sub-contractor to the owner, will not vitiate the notice, unless it appears that the owner was misled thereby to his prejudice.'' [Construction Co. v. Jones, supra.]

But it is insisted that the judgment can be upheld for another reason, viz., that Richards & Conover and Hodge were not subcontractors. It is claimed that the former had no contract with the contracting company to furnish the beading to go into the building. We think this is a misconstruction of the testimony. It was shown that the company for the construction of the building made a verbal order upon Richards & Conover for the material to be used in the building, and that they furnished it for that express purpose. And it was further shown that Richards & Conover also purchased the material for the express purpose of filling the order of the contracting company, and the plaintiff sold the material on the credit of the building. Richards & Conover were subcontractors for furnishing the material to the contractor, and Hodges was a subcontractor to furnish it to Richards & Conover. Because they were materialmen did not prevent them from being subcontractors and there can be such a thing as a subcontractor to a subcontractor. [Construction Co. v. Jones, supra.]    The cause is reversed and remanded.    All concur.